OPINION OF THE COURT
Marjory D. Fields, J.
The issue presented in this proceeding is what constitutes corroboration of a child’s out-of-court statements under the 1985 amendment to Family Court Act § 1046 (a) (vi). The legislative history of the amendment (L 1985, ch 724) shows its purpose was to "expressly provide that the child’s testimony is not necessary as corroboration of out-of-court statements of the child admitted into evidence, but that any evidence shall be sufficient to corroborate the out-of-court statements as the basis of a family court fact finding of child abuse or neglect.” (Mem in support of legislation, A 6555-A, S 5210-A, at 1; emphasis added.) The memorandum in support of the amendment specifies that it does not change the corroboration requirement, but clarifies the nature and extent of corroboration necessary (by "specifying] that any other evidence is sufficient,” and that the child is not required to testify to corroborate prior statements). (Id.) Thus, the Legislature, in amending Family Court Act § 1046 (a) (vi), grappled with the problem examined in Matter of Joli M. (131 Misc 2d 1088 [Fam Ct, NY County 1986]) and came to the same conclusion: not every aspect of a child’s out-of-court statements must be corroborated for those statements to form the basis of a finding of abuse or neglect.
After hearing the witnesses and observing their demeanor, and after a thorough review of respondent father’s medical records, the . court finds that the Commissioner of Social Services has sustained his burden of proof by a preponderance of the evidence. The court finds that the children Mayra and Sophie were sexually abused, and Carlos was physically abused by the respondent father, Francisco T. The court also finds that the respondent mother, Luz Maria T., knew of the continuing abuse of all the children which stretched over *255 years and that she has abused the children by failing to protect them.
Respondent mother failed to protect her daughters or to seek help to terminate the sexual abuse until the night of April 17, 1986. On that night, the respondent mother went to the 40th Precinct with one son and her three daughters, Marisol,[1] Mayra and Sophie. Police Officer Lopez, shield number 27353, who speaks Spanish, as well as English, testified that respondent mother and the three girls each told him the mother and all the children had been beaten with an electrical cord, and the respondent father had sexually abused all the girls for a long time. Officer Lopez testified that Mayra stated to him that if she refused to lie down next to respondent father, he would swing an electrical cord at her.
Respondent father asserts that the failure of a prompt outcry makes the testimony of the three girls incredible.[2] The leading work on the subject of child sexual abuse, Handbook of Clinical Intervention in Child Sexual Abuse, by Suzanne M. Sgroi, M.D., published by Lexington Books, 1982, cited with approval in Matter of Nicole V. (123 AD2d 97, 103 [1st Dept 1987]), stresses, "When the sexual abuse has occurred within the family circle, suppression is likely to be intense. The perpetrator can be expected further to exploit his or her power position by pressuring the child and any other family members who appear to be cooperating with outside authority figures.” (Sgroi, op. cit., at 25.) Thus, delayed outcry is common in child sexual abuse cases.
The court finds the testimony of Marisol, which showed that respondent had sexually abused her when she lived in his household, credible. Marisol had no reason to lie. There could accrue no advantage to her from identifying her stepfather as someone who had sexually abused her. Respondent father *256 failed to present evidence of any motive for Marisol to give false testimony against him.
In addition to her testimony with respect to respondent’s sexual abuse of her, Marisol testified that her stepfather, respondent Francisco T.: used an electrical cord to hit all the children; punished Carlos by hitting him with a belt until marks were left on Carlos’ back; and used an electrical cord to whip Carlos as recently as 1983. She testified that her stepfather told her mother to hit Sophie with a belt, with which command her mother complied, leaving marks. Marisol testified her mother hit Carlos with a belt because he stayed in the streets for a couple of days. Marisol also testified that dinner time was when beatings were common if the children angered their father by not finishing their meals.
The child Mayra testified under oath to forcible sexual contact by her father as defined in Penal Law § 130.00 (3), which constitutes the crime of sexual abuse in the first degree, a violation of Penal Law § 130.65. Mayra’s subsequent recantation of the sexual abuse allegation during her testimony is consistent with the child sexual abuse syndrome as described by Sgroi. Mayra testified that she previously told Miss Flores, an attorney with the Office of Legal Affairs of the Department of Social Services, and Miss Frishman, who is the petitioner’s attorney in this matter, of her father’s forced sexual abuse of her.
To the court’s question regarding whether she was worried about her father, Mayra responded in the affirmative. When the court asked her if she were afraid that her father might go to jail, she did not respond. Instead, she started to cry.
After she recanted the sexual abuse allegation, Mayra testified that her father hit everyone in the family with a television extension cord. She remembers that when she was in elementary school, her father hit her with an extension cord. Her father hurt her with the cord but she does not remember any marks on her body. She testified, however, that her father has the strength to "hit hard”.
On the issue of recantation, Sgroi stated that enormous pressure would be put upon "family members who appear to be cooperating with outside authority figures”. She continued, "Sometimes the suppression is limited to verbal pressure calculated to induce feelings of guilt in the child for his or her part in the disclosure. Other family members may join in this process and 'gang up’ on the child. Feeling isolated and *257 perhaps even ostracized, the child may give in and withdraw the complaint or simply stop cooperating with those who are trying to assist him or her.” (Sgroi, op. cit., at 25.) Mayra’s behavior fits this description.
Police Officer Michael Green, shield number 2350, PSA7 Housing Authority, testified that he found Carlos in the stairwell in the project where the family lives. He took Carlos into custody because Carlos had run away from placement in Staten Island. Carlos told Officer Green that respondent mother gave him food and money during the day and then had him leave the house before respondent father came home, because the father would punish all the children and the mother if Carlos were found in the home.
Carlos told Officer Green respondent father beat him, all the other children and the mother. According to Officer Green, Carlos’ words were that the father "beat everyone in the family”. Carlos did not specify when the beatings took place.
The court does not find credible the testimony of respondent father’s sister, Eva (phonetic) T. The sister testified she is concerned about the family and has been involved with them for a long time. She sees herself as a protector of all members of the family, including her brother.
The major portion of Eva T.’s testimony was aimed at undermining the credibility of Marisol. She stressed that Marisol ran away from home frequently. Sgroi emphasizes that the family’s efforts to suppress the disclosure are manifested by "attempts to undermine the child’s credibility. The child may be described by other family members as a pathological liar or as mentally disturbed or 'crazy’. Previous school problems or difficulties in interpersonal relationships may be cited as evidence that the child is untrustworthy or disturbed. If an adolescent victim has ever run away from home, skipped school, stayed out too late, or engaged in peer sexual activity, these behaviors may be cited to support the family’s contention that the child’s allegation of sexual abuse is untrue.” (Id., at 26-27.) This is exactly what Eva T.’s testimony centered on, Marisol’s running away and her sexual activity with peers.
Respondents present no motive for the girls to have all fabricated the physical and sexual abuse, or for Carlos to have fabricated the physical abuse. The court finds the testimony of Marisol and Mayra credible.
The corroboration requirement of Family Court Act § 1046 (a) (vi) is not the same as the corroboration required pursuant *258 to the pre-1984 provision of Penal Law § 130.16, which was repealed in part. (L 1984, ch 89.) The repealed portion of Penal Law § 130.16 required corroboration of every element of a sex offense alleged to have been committed against a child under the age of 17: identity of the offender; nature of the act; time of the offense; date of the offense; place of the offense; and age of the victim. That corroboration requirement of the Penal Law never applied to child protective proceedings. (Family Ct Act § 1012 [e] [iii].)
Under Family Court Act § 1046 (a) (vi) the corroboration required is that which is sufficient to establish the reliability of the child’s out-of-court statement. This is the same standard for other exceptions to the rule against hearsay testimony. The legislative memorandum (op. cit.) refers to the common-law exception for excited utterances of res gestae. It cites the definition of corroboration in Black’s Law Dictionary (5th ed 1979): "[ejvidence supplementary to that already given and tending to strengthen or confirm it. Additional evidence of a different character to the same point.” (Matter of Tara H., 129 Misc 2d 508 [Fam Ct, Westchester County 1985].)
When enacting the amendment to Family Court Act § 1046 (a) (vi) the Legislature considered the Sixth Amendment Confrontation Clause of the US Constitution as construed by the United States Supreme Court in Pointer v Texas (380 US 400 [1965]) and Ohio v Roberts (448 US 56 [1980]). The Legislature intended that the corroboration requirement of Family Court Act § 1046 (a) (vi) satisfy the standard of reliability for hearsay exceptions in criminal proceedings. (Mem in support of legislation A 6555-A, S 5210-A, at 2.) Thus, the corroboration must show the out-of-court statement is reliable; it need not confirm every aspect of the out-of-court statement.
The out-of-court statements of the children recounting the abuse are corroborated by Mayra and Marisol’s sworn testimony and the out-of-court statements of Mayra, Marisol, Sophie and Carlos to police officers. The testimony and the out-of-court statements fulfill the corroboration requirements of Family Court Act § 1046 (a) (vi). The court in Matter of Joli M. (131 Misc 2d 1088, 1091, supra [Fam Ct, NY County 1986]) held that "once competent nonhearsay evidence has supported the credibility of a significant part of the out-of-court statement, consistent with the * * * criteria [of Family Court Act § 1046 (a) (vi)], the statement as a whole may be used as the basis for a finding.” Thus, when any competent evidence is available to corroborate a significant part of the out-of-court *259 statements, a finding may be made. (Matter of Nicole V., 123 AD2d 97, supra [1st Dept 1987]; Matter of Tina H., 123 AD2d 864 [2d Dept 1986]; Matter of Fawn S., 123 AD2d 871 [2d Dept 1986]).
Thus, the court finds that the petitioner has established the allegations of the petition by a preponderance of the evidence: the children Mayra and Sophie were sexually abused by both respondents; the child Carlos was physically abused by both respondents. A finding of derivative abuse is made with respect to the child Francisco. The respondent mother failed to protect the children from the father even though she knew of the physical and sexual abuse for years. The children are abused by both respondents.

. Marisol, who is 18 years old and not a subject of this petition, is Francisco T.’s stepdaughter.

. [2] Respondent father asserts that this proceeding is barred because of a prior proceeding. The withdrawal of a prior petition, if there was one, without a finding having been made is not relevant to this proceeding. CPLR 3217 (c) allows a discontinuance of a civil proceeding without any issue of jeopardy arising. In addition, the respondent father’s claim that Marisol has gotten two opportunities to "prosecute” is inappropriate in this proceeding, which is brought by the Commissioner of Social Services. Marisol is not a party and was never a party. If there was a prior proceeding, Marisol would have been the subject of that proceeding or a witness, not the petitioner.